UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| RALPH MELTON, | : |
| | : Civil Action No. _____ |
| Plaintiff, | : |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| CALYXT, INC., MICHAEL A. CARR, YVES | : **SECURITIES EXCHANGE ACT OF** |
| J. RIBEILL, LAURENT ARTHAUD, | : **1934** |
| PHILIPPE DUMONT, JONATHAN B. | : |
| FASSBERG, ANNA EWA KOZICZ- | : **JURY TRIAL DEMAND** |
| STANKIEWICZ, KIMBERLY K. NELSON, | : |
| and CHRISTOPHER J. NEUGENT, | : |
| | : |
| Defendants. | : |

---

Plaintiff Ralph Melton ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Calyxt, Inc. ("Calyxt" or the "Company"), and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Calyxt, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9 (17 C.F.R. § 240.14a-9). Plaintiff's claims arise in connection with the proposed merger between Calyxt and Cibus Global, LLC ("Cibus Global").

1

2. On January 13, 2023, Calyxt and Calypso Merger Subsidiary, LLC ("Merger Subsidiary"), a wholly-owned subsidiary of Calyxt entered into an Agreement and Plan of Merger ("Merger Agreement") with Cibus Global, New Ventures I Holdings, LLC ("Blocker 1"), BCGF CB Holdings LLC ("Blocker 2"), BCGFCP CB HOLDINGS LLC ("Blocker 3"), BCGFK CB Holdings LLC ("Blocker 4"), FSBCGF CB Holdings LLC ("Blocker 5"), PYLBCG CB Holdings LLC ("Blocker 6"), FSGRWCO CB Holdings LLC ("Blocker 7"), GROWTHCO CB Holdings LLC ("Blocker 8"), GRTHCOCP CB Holdings LLC ("Blocker 9"), and GRWTHCOK CB Holdings LLC ("Blocker 10" and, collectively with Blocker 1 through 9, the "Blockers"). Pursuant to the Merger Agreement: (i) each of the Blockers will merge with and into Calyxt (collectively, the "Blocker Mergers"), with the Blockers ceasing to exist and Calyxt surviving and being renamed Cibus, Inc.; and (ii) following the Blocker Mergers, Merger Subsidiary will merge with and into Cibus Global, with Cibus Global surviving (the "Cibus Global Merger" and, together with the Blocker Mergers, the "Proposed Merger").

3. Upon consummation of the Proposed Merger, Calyxt shareholders are expected to own **only** approximately 5% of the issued and outstanding common stock of Cibus, Inc., while Cibus Global unitholders will own the remaining 95%.

4. On February 14, 2023, in order to convince the Company's shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement ("Registration Statement")[1] with the U.S. Securities and Exchange Commission ("SEC") in violation of Sections 14(a) and 20(a) of the Exchange Act. In particular, the Registration Statement **entirely omits**: (i) the Company's seven-year

---

[1] The Registration Statement is available at:
https://www.sec.gov/ix?doc=/Archives/edgar/data/0001705843/000119312523039243/d401831ds4.htm.

2

financial model and projections prepared by Calyxt management and approved by the Calyxt Committee[2]; (ii) the financial analyses performed by the Calyxt Committee's financial advisor, Canaccord Genuity LLC ("Canaccord Genuity") in connection with the Proposed Merger; (iii) the fee that Canaccord Genuity received and/or will receive from Calyxt for serving as the Calyxt Committee's financial advisor; (iv) whether Canaccord Genuity rendered services to the Company or Cibus Global in the two years prior to the Proposed Merger; (v) whether the confidentiality agreements that the Company executed with the nine potential counterparties contained standstill provisions; and (vi) whether Calyxt entered into confidentiality agreements with Company A, Company B, and Company C.

5.    The Proposed Merger is expected to close in the second quarter of 2023, so the special meeting of the Company's shareholders to vote on the Proposed Merger is imminent (the "Shareholder Vote").  Therefore, it is imperative that the material information omitted from the Registration Statement is disclosed to Calyxt's shareholders prior to the Shareholder Vote, so Plaintiff can cast an informed vote on the Proposed Merger.

6.    For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to Calyxt's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

---

[2] After a series of meetings in April and May of 2022, the Board formed the Calyxt Committee to oversee the strategic review process and make recommendations to the Board regarding potential strategic transactions.  Formation of the Calyxt Committee marked the start of the sales process that resulted in execution of the Merger Agreement.

**JURISDICTION AND VENUE**

7. This Court has original jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction), as Plaintiff is alleging violations of Sections 14(a) and 20(a) of the Exchange Act.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, the Company maintains its principal executive offices in this District at 2800 Mount Ridge Road, Roseville, MN 55113.

**PARTIES**

10. Plaintiff Ralph Melton (defined above as "Plaintiff") is, and has been at all relevant times, an owner of Calyxt common stock.

11. Defendant Calyxt, Inc. (defined above as "Calyxt" or the "Company") is a public company incorporated under the laws of Delaware with principal executive offices located in Roseville, MN. The Company's common stock trades on the Nasdaq Capital Market under the ticker symbol "CLXT". Calyxt is a synthetic biology company that engages in delivering plant-based solutions primarily to the agriculture end market in the United States. The Company is involved in the development of improved digestibility alfalfa, hemp, and wheat with a higher fiber content. Calyxt has a commercialization agreement with S&W Seed Company for the exclusive license of an improved quality alfalfa seed in the United States and internationally.

4

12. Individual Defendant Michael A. Carr is, and has been at all relevant times, the Company's President, Chief Executive Officer, and Board member.

13. Individual Defendant Dr. Yves J. Ribeill is, and has been at all relevant times, Chair of the Board and a member of the Calyxt Committee.

14. Individual Defendant Laurent Arthaud is, and has been at all relevant times, a director of the Company.

15. Individual Defendant Philippe Dumont is, and has been at all relevant times, a director of the Company.

16. Individual Defendant Jonathan B. Fassberg is, and has been at all relevant times, a director of the Company.

17. Individual Defendant Anna Ewa Kozicz-Stankiewicz is, and has been at all relevant times, a director of the Company and a member of the Calyxt Committee.

18. Individual Defendant Kimberly K. Nelson is, and has been at all relevant times, a director of the Company and a member of the Calyxt Committee.

19. Individual Defendant Christopher J. Neugent is, and has been at all relevant times, a director of the Company and Chair of the Calyxt Committee.

20. The Individual Defendants referred to in ¶¶ 12-19 are collectively referred to herein as the "Individual Defendants" or the "Board", and together with Calyxt, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.  Background of the Proposed Merger**

21. On January 17, 2023, the Company issued a joint press release with Cibus Global announcing the Proposed Merger, as follows:

**Calyxt and Cibus Announce Definitive Merger Agreement to Create Industry-Leading Precision Gene Editing and Trait Licensing Company**

*– The merger will bring together the technology platforms and facilities of two pioneering companies to create a leader in precision gene editing focused on driving sustainable agriculture and the availability of renewable low-carbon ingredients –*

*– Upon closure of the merger, Rory Riggs, Cibus Co-Founder, will become Chief Executive Officer and Chairman of the combined company and the Cibus leadership team will lead the new organization –*

**ROSEVILLE, Minn., and SAN DIEGO** – January 17, 2023 – Calyxt, Inc. (Nasdaq: CLXT), a plant-based synthetic biology company, and Cibus, a leader in precision gene editing in agriculture, today announced that both companies have entered into a definitive merger agreement under which Calyxt and Cibus will merge in an all-stock transaction. The merger will create a new industry-leading company that combines the two pioneers in agriculture-based gene editing and establishes one of the world's most sophisticated facilities for trait development and next-generation plant breeding.

The combined company will be a leader in two key applications for gene editing in agriculture:

1) **Productivity Traits**: Productivity traits are a key basis of competition in the "seed and trait" business. The key focus of Cibus' patented gene editing platform, the Rapid Trait Development System™ (**_RTDS_**®), is the development of a new class of productivity traits in seeds addressing the sustainability of farming by increasing crop yields and reducing inputs such as fungicides, herbicides, pesticides, and fertilizers.

2) **Renewable Low-Carbon Ingredients**: Gene editing is a key tool in the development of sustainable low-carbon ingredients that can replace fossil fuel-based ingredients and diesel fuel. This is a key pillar of the Net Carbon Zero Climate 2040 goals and the global movement to reduce greenhouse gas emissions.

Cibus has a broad pipeline of productivity traits and collaborations with several leading seed companies. It is currently launching three important productivity traits: one in canola and two in rice with transfers to customers for commercialization beginning in the first half of 2023. In addition, Cibus and Calyxt are both working with leading consumer product companies to develop more sustainable ingredients.

Under the terms of the merger agreement, Calyxt will issue shares of its common stock to Cibus shareholders in an exchange ratio such that upon completion of the merger, Calyxt shareholders will own approximately 5% of the combined company, subject to adjustments permitted by the merger agreement. The Boards of Directors of both companies have unanimously approved the transaction. Concurrent with the execution of the merger agreement, certain officers of Calyxt, all of Calyxt's directors, and Cellectis, S.A., Calyxt's largest shareholder, executed support agreements in favor of the merger. These support agreements provide 49.9% approval from Calyxt shareholders. A majority of Cibus' shareholders have also provided support agreements in favor of the transaction. The merger is expected to close in the second quarter of 2023, subject to customary closing conditions, including approval of the merger by the shareholders of Calyxt.

"Cibus is an excellent strategic fit for Calyxt given our complementary technology platforms, and the merger provides a great opportunity to leverage multiple synergies to drive innovation and shareholder value," said Michael A. Carr, President and Chief Executive Officer of Calyxt. "I am deeply proud of the significant accomplishments made by our team and their commitment to further science in significant ways."

"We believe 2023 will be a transformative year for Cibus due to many of our major accomplishments that are coming to fruition this year," said Rory Riggs, Co-Founder, Chief Executive Officer, and Chairman of Cibus. "Through our Trait Machine™, which is planned to come on-line in a stand-alone facility in 2023, we are preparing to transfer our first product: a pod shatter reduction trait in canola in the elite germplasms of five different canola seed companies. In addition, in 2023, we are preparing to transfer two different herbicide resistance traits in rice in the elite germplasm of a leading North American rice seed company. Each of the three developed traits have been determined not to be regulated articles through the USDA's "Am I Regulated" process, which was replaced with the SECURE Rule's confirmation process. The successful development and transfer of these first traits to our customers will be an important milestone in the gene editing industry. It will also be a major commercial milestone in the growth of Cibus. We are very excited by the ability of this transaction – through the addition of both Calyxt's state-of-the-art gene editing facilities and its talented scientists – to accelerate our growth."

"2023 is also expected to be an important year for the regulations covering gene editing in agriculture with the European Commission and many other countries reviewing their laws for regulating certain new genomic techniques," added Peter Beetham, President and Chief Operating Officer of Cibus. "Notably, the UK is on course to introduce new laws broadly consistent with the laws from a growing list of important trading nations including the United States, Canada, Argentina, Brazil and Japan. These regulatory changes, if adopted, promise to enable more open and fair trade in agriculture for these new technologies and encourage research and innovation, greatly increasing the potential of gene editing to contribute globally to sustainable agriculture, food security and climate resilience. This merger positions the combined companies to be a leader in this important new industry and to accelerate our progress."

"We are excited to combine our joint wealth of experience that consolidates landmark intellectual property in agricultural gene editing including Transcription Activator-like Effector Nucleases ("TALENs") and Oligonucleotide Directed Mutagenesis ("ODM")," said Greg Gocal, Co-Founder, Executive Vice President and Chief Scientific Officer of Cibus. "The merger of two of the original pioneers in what has become the field of gene editing in agriculture, will enable new and expanded partnerships and opportunities to make farming more productive and to create a new generation of sustainable ingredients that are renewable and low-carbon."

"Consolidating our innovative platforms into one entity brings a myriad of opportunities for step change innovations in the areas of productivity and low-carbon ingredients. I'm particularly excited for the teams of talented scientists from both companies to combine. I truly believe we will see a force multiplier effect of scientific discovery and operationalization to deliver these customer-demanded products in record time," added Travis Frey, Chief Technology Officer of Calyxt.

Upon closing of the transaction, the combined company, renamed Cibus Inc., will trade on the Nasdaq Capital Market. The current Cibus management team will lead the new combined organization with Rory Riggs assuming the roles of Chairman of the Board of Directors and Chief Executive Officer. Mr. Riggs has been the founder and Chairman/Director of many successful healthcare and biotechnology companies including Royalty Pharma, Fibrogen and Sugen and was the President and Director of Biomatrix (Nasdaq: BIOX) until its sale to Genzyme/Sanofi, where he launched Synvisc®, a leading biologic for the treatment osteoarthritis. Corporate headquarters for the combined company will be located in San Diego, California and Calyxt's offices, laboratory, and breeding facilities in Roseville, Minnesota will remain operational as a key site for the combined company.

Canaccord Genuity served as financial advisor and Sidley Austin served as legal counsel to Calyxt, and Jones Day served as legal counsel to Cibus with respect to the transaction.

(Emphasis in the original).

**II.     The Registration Statement Omits Certain Material Information**

22.     Defendants filed the materially incomplete and misleading Registration Statement with the SEC, despite the Individual Defendants being obligated to carefully review the Registration Statement before it was filed and disseminated to the Company's shareholders, to ensure it did not contain any material misrepresentations or omissions. Therefore, the Registration Statement must be amended prior to the Shareholder Vote, so Plaintiff and the Company's other shareholders can cast an informed vote on the Proposed Merger.

23.     First, the Registration Statement entirely omits the Company's financial projections, despite several references to them in the Registration Statement.  Indeed, on June 10, 2022, at the start of the sales process that resulted in the Proposed Merger, the Calyxt Committee met with management to review and discuss the Company's "seven-year financial model and projections", which the Committee had previously requested from management. Registration Statement, 118. The Calyxt Committee gave management feedback on the seven-year model and projections; however, the substance of this feedback is also omitted from the Registration Statement. *Id.*  The Committee then approved the Company's seven-year model and projections with the updates made from the Committee's feedback (the "Calyxt Projections"), and instructed Canaccord Genuity to use these Calyxt Projections to perform an analysis on the Company. *Id.*

24.     Accordingly, Defendants must disclose the Calyxt Projections prior to the Shareholder Vote, so the Company's shareholders can properly assess the value of Calyxt, evaluate the Proposed Merger, and determine whether the Proposed Merger will unfairly dilute their stock ownership.

25.     Second, the Registration Statement entirely omits the financial analyses performed by Canaccord Genuity for Calyxt and Cibus Global, once again despite several

references to them in the Registration Statement. Following creation of the Calyxt Committee, the Committee retained Canaccord Genuity to serve as its independent financial advisor in connection with the sales process. Thereafter, on June 24, 2022, at a Calyxt Committee meeting, "Canaccord Genuity reviewed and discussed their preliminary financial analysis of Calyxt utilizing the previously approved" Calyxt Projections. *Id.* Moreover, at the October 19, 2022, Board meeting, the Board, management, and Canaccord Genuity discussed "Canaccord Genuity's preliminary financial analysis of Cibus". *Id.* at 121.

26.     Thus, the material omission of Canaccord Genuity's financial analysis of the Company and Cibus from the Registration Statement is a direct violation of the following SEC regulations: Item 1015 (17 CFR § 229.1015) and Item 14(b)(6) (17 CFR § 240.14a-101). In addition, Calyxt's shareholders are "entitled to a fair summary of the substantive work performed by" Canaccord Genuity because it goes to the fairness of the Proposed Merger, which is crucial for shareholders to be apprised of in order to cast an informed vote. *In re Pure Res. S'Holders Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002).

27.     Third, the Registration Statement does not disclose the fee that Canaccord Genuity is set to receive and/or received from the Company for its role as the Calyxt Committee's financial advisor in connection with the Proposed Merger. This omission violates Item 1015(b)(4), because Item 1015(b)(4) requires disclosure of any compensation received or to be received as a result of the relationship between a financial advisor and the company it advises (or its related affiliates).

28.     Fourth, the Registration Statement fails to disclose whether Canaccord Genuity rendered services to Calyxt or Cibus Global during the two years prior to the Proposed Merger,

and if so, the compensation that Canaccord Genuity received for rendering those services. This information is also another material disclosure required under Item 1015(b)(4).

29. <u>Fifth</u>, the Registration Statement provides that the Company entered into confidentiality agreements with nine potential counterparties. However, the Registration Statement fails to disclose whether those confidentiality agreements contained standstill provisions, and if so, whether those standstill provisions contained "don't ask don't waive" ("DADW") provisions, including whether those provisions fell away upon execution of the Merger Agreement or still remain in effect. Failure to disclose the existence of DADW provisions creates the false impression that an interested party who signed a confidentiality agreement could have made a superior proposal. **But that is not true.** If that confidentiality agreement contained a DADW provision, the interested potential acquirers could only make a superior proposal by breaching their respective agreement, because in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, omission of this information is misleading because potential topping bidders in the marketplace may be precluded from making a superior offer.

30. <u>Sixth</u>, the Registration Statement does not disclose whether Calyxt entered into confidentiality agreements with Company A, Company B, and Company C, each of whom submitted indications of interest to Calyxt during the sales process.

31. In sum, omission of the above-referenced information renders the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to cast an informed vote on the Proposed Merger, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act)**

32. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

34. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

35. The omission of information from a registration statement will violate Section 14(a) if other SEC regulations (like 17 CFR § 229.1015 and 17 CFR § 240.14a-101) specifically require disclosure of the omitted information. Indeed, Item 1015 (17 CFR § 229.1015) and Item 14(b)(6) (17 CFR § 240.14a-101) require disclosure of the financial advisor's financial analyses, as well as information concerning the financial advisor's relationships and compensation. Therefore, omission of this information violates Section 14(a).

11

36. Defendants have issued the Registration Statement with the intention of soliciting the Company's common shareholders' support for the Proposed Merger. Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide material information regarding, amongst other things: (i) the Calyxt Projections; (ii) the financial analyses performed by Canaccord Genuity; (iii) the fee that Canaccord Genuity received and/or will receive from Calyxt for serving as the Calyxt Committee's financial advisor; (iv) whether Canaccord Genuity rendered services to the Company or Cibus Global in the two years prior to the Proposed Merger; (v) whether the confidentiality agreements that the Company executed with the nine potential counterparties contained standstill provisions; and (vi) whether Calyxt entered into confidentiality agreements with Company A, Company B, and Company C.

37. In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

38. The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Registration Statement states that Canaccord

Genuity reviewed and discussed its financial analyses with the Individual Defendants, and further states that the Individual Defendants considered the financial analyses provided to them. Further, the Individual Defendants were privy to and had knowledge of the Company's financial projections and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

39. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement.

40. Calyxt is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

41. The misrepresentations and omissions in the Registration Statement are material and will deprive Plaintiff of his right to cast an informed vote on the Proposed Merger if not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through

the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Calyxt within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or knowledge of the misleadingly incomplete statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the material statements that Plaintiff contends are incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement contains the

unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

46. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B. Directing Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 6, 2023

                                             */s/Garrett D. Blanchfield*
Garrett D. Blanchfield (#209855)
**REINHARDT WENDORF & BLANCHFIELD**
332 Minnesota Street, Suite W1050
St. Paul, MN 55101
Tel: (651) 287-2100
Email: g.blanchfield@rwblawfirm.com

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
Rossella Scarpa
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
jmonteverde@monteverdelaw.com
rscarpa@monteverdelaw.com

*Attorneys for Plaintiff*